MARC E. JOHNSON, Judge
Lin this workers’ compensation case, defendant, Martin’s Wine Cellar, appeals the judgment of the trial court awarding plaintiff, Jeannie Redmann, supplemental earnings benefits as well as penalties and attorney’s fees. For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

On January 7, 2006, plaintiff suffered a work-related L5-S1 back injury while employed as a manager of the catering and deli department with Martin’s Wine Cellar (“Martin’s”). In particular; she injured herself bending over and picking up a tray of finger sandwiches. Plaintiff initially sought treatment with her primary care physician, Dr. Scott Simeon, and then treated with several specialists, including Dr. Alexis Waguespack, Dr. Gary Glynn, Dr. William Johnston, Dr. Patrick Waring, Dr. John Steck, Dr. Andrea Toomer, and Dr. Donald Dietze. As a result of her injury, plaintiff was unable to work for a period of time and received workers’ compensation and medical benefits.
Approximately four months after her injury, plaintiff returned to work on light duty status. Her restrictions included working a four-hour day, being able to |3alternate between sitting and standing, no carrying or lifting over ten pounds, and no bending or stooping. Plaintiff continued to work in this restricted capacity until Martin’s terminated her on January 15, *1091 2007. Upon her termination, Martin’s continued to pay plaintiff workers’ compensation benefits.
Approximately one year later, a dispute arose regarding plaintiffs medical condition and need for surgery. As a result, plaintiff filed a Disputed Claim for Compensation seeking additional benefits and treatment of her low back pain at L3-L4, even though the problems for which she had been treated immediately after the 2006 accident were at L5-S1. The matter proceeded to trial in July 2009. In a judgment rendered in September 2009, the trial court found that plaintiff sustained a work-related injury to her L5-S1 disc as a result of the 2006 accident, but that she failed to prove her injury at L3-L4 was causally related to the 2006 accident. Accordingly, the trial court refused to approve surgery for the L3-L4 level. However, the trial court found Martin’s failed to reasonably controvert plaintiffs need for treatment and diagnostic tests and, as such, assessed penalties and attorney’s fees against Martin’s. This Court affirmed the trial court’s ruling on appeal. Redmann v. Martin’s Wine Cellar, 10-135 (La.App. 5 Cir. 10/12/10), 51 So.3d 41.
After the trial court’s September 2009 judgment but before this Court’s October 2010 opinion, Martin’s ceased payment of all workers’ compensation benefits to plaintiff. The parties stipulated that plaintiff received workers’ compensation benefits until October 20, 2009.
On November 16, 2009, plaintiff filed a second claim for compensation disputing the termination of benefits. She asserted there was a dispute as to her disability status, and she sought payment of past due benefits, penalties and attorney’s fees. Trial was held on January 13, 2011. The trial court rendered [¿judgment on March 11, 2010 awarding plaintiff supplemental earnings benefits from January 15, 2007 through the present. The trial court specifically found that plaintiff never fully recovered from her L5-S1 injury and found she was entitled to medical expenses, transportation expenses, vocational rehabilitation expenses and training for the L5-S1 injury. The trial court further determined Martin’s did not reasonably controvert plaintiffs need for additional medicals and diagnostic testing after October 25, 2009 arising from her L5-S1 injury and assessed penalties of $8,000 and attorney’s fees in the amount of $8,000 against Martin’s. Martin’s suspensively appeals this judgment.

ISSUES

Martin’s raises four issues on appeal. First, Martin’s claims the trial court improperly re-litigated the issue of whether plaintiffs L5-S1 injury was resolved. It contends that after the first trial, the trial court and this Court, on appeal, concluded plaintiff had recovered from her L5-S1 injury. As such, Martin’s maintains the issue is barred by the doctrine of res judi-cata. Second, Martin’s asserts the trial court erred in failing to find plaintiff forfeited her rights to workers’ compensation benefits under La. R.S. 23:1208. Third, Martin’s argues plaintiff failed to carry her burden of proving entitlement to supplemental earnings benefits. And, finally, Martin’s alleges the trial court erred in awarding penalties and attorney’s fees.

ANALYSIS

Res Judicata

For the first time on appeal, Martin’s argues that the issue of plaintiffs continued disability from her L5-S1 work-related injury is barred by res judicata. It contends that this Court, in affirming the trial court’s 2009 judgment finding plaintiffs L3-L4 problems were not relat *1092 ed to the 2006 work-related accident, 15concluded plaintiffs 2006 injury at L5-S1 had resolved. In support of its position, Martin’s cites that portion of this Court’s opinion in which we stated, “Redmann’s problems started with L5-S1 complaints, which improved, and the L3-4 condition developed later and was not persuasively established to result from the 2006 injury.” Redmann, 51 So.3d at 47.
The doctrine of res judicata is found in La. R.S. 13:4231, which provides that a valid and final judgment is conclusive between the same parties “in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.” Under this principle of issue preclusion, once a court decides an issue of fact or law that is necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Smith v. Parish of Jefferson, 04-860 (La.App. 5 Cir. 12/28/04), 889 So.2d 1284, 1288. Issue preclusion serves the interest of judicial economy by preventing relitigation of the issues between the same parties. Id. The doctrine of res judicata is stricti juris, and any doubt concerning the application of res judicata must be resolved against its application. Bourgeois v. A.P. Green Industries, Inc., 09-753 (La.App. 5 Cir. 3/23/10), 39 So.3d 654, 657, writ denied, 10-923 (La.6/25/10), 38 So.3d 341.
Res judicata is a peremptory exception that can be raised for the first time in the appellate court. La. C.C.P. arts. 927 and 2163; Smith v. State, Dept. of Transportation & Development, 04-1317 (La.3/11/05), 899 So.2d 516, 530. However, in order for the exception to be considered, “proof of the ground of the exception” must appear in the record. Smith, 899 So.2d at 530.
Martin’s relies on the trial court’s 2009 judgment and this Court’s 2010 opinion, both of which appear in the record, as proof of its claim of res judicata. However, plaintiffs first Disputed Claim for Compensation is not in the record. 16The trial court’s 2009 judgment makes no determination of plaintiffs disability as related to her L5-S1 injury. The only finding the trial court made regarding the L5-S1 injury was that plaintiff sustained the injury in a 2006 work-related accident. The rest of the judgment related to plaintiffs claim for benefits relating to an injury at L3-L4, which the trial court found was not related to the 2006 work-related accident. This Court subsequently affirmed the trial court’s judgment. Redmann, supra. This Court’s comment that plaintiffs L5-S1 injury had improved, in the context of plaintiffs claim for newly developed problems at L3-L4, had no bearing on plaintiffs disability relating to the L5-S1 injury or her entitlement to workers’ compensation benefits for said injury.
There is nothing in the record to show that the issue of plaintiffs disability for the L5-S1 injury or her entitlement to benefits for the L5-S1 injury was an issue in plaintiffs first claim. In fact, according to the parties’ stipulations in the present case, plaintiff was receiving workers’ compensation benefits for the L5-S1 injury at the time of the first trial; thus, the dispute did not exist at that time. As such, the issue of plaintiffs disability for the L5-S1 injury was not precluded by res judicata.

Forfeiture of Benefits under La. R.S. 23:1208

Martin’s next argues Ms. Redmann forfeited the right to workers’ compensation benefits under La. R.S. 23:1208 because she misrepresented her physical activities. Specifically, Martin’s contends Ms. Redmann failed to disclose one in *1093 stance where she volunteered at her child’s school and one instance where she drove to Pensacola, Florida for a vacation.
Martin’s raised the issue of Ms. Redmann’s violation of La. R.S. 23:1208 in its response to the pre-trial questionnaire. However, the trial court did not address 17this specific issue in its judgment. Silence in a judgment on any issue that has been placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. Adams v. Sysco Food Service of New Orleans, 07-935 (La.App. 5 Cir. 6/30/08), 990 So.2d 34, 48.
The Workers’ Compensation Act imposes penalties, specifically the forfeiture of benefits, for willfully making a false representation in connection with a compensation claim. La. R.S. 23:1208. In order to establish that a claimant has forfeited his right to workers’ compensation benefits under La. R.S. 23:1208, the employer must show: (1) the claimant made a false statement or representation; (2) it was willfully made; and (3) it was made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7, 12; Porter v. Pellerin Construction Company, 06-949 (La.App. 5 Cir. 4/11/07), 958 So.2d 7, 10, writs denied, 07-1076 and 07-1015 (La.8/31/07), 962 So.2d 438. Forfeiture of workers’ compensation benefits is a harsh remedy, and because La. R.S. 23:1208 is penal in nature, it must be strictly construed. Ocon v. Regency Motors of Metairie, LLC, 06-834 (La.App. 5 Cir. 4/11/07), 957 So.2d 816, 820, writ denied, 07-1063 (La.9/21/07), 964 So.2d 332.
In determining whether a statement was made willfully in an attempt to obtain or defeat benefits, the relationship between the false statement and the pending claim is probative. False statements that are inadvertent or inconsequential will not result in forfeiture. Ocon, 957 So.2d at 820.
The determination of whether a claimant has forfeited her right to benefits by making false statements or misrepresentations involves inherently factual determinations, which may not be set aside by an appellate court unless they are manifestly erroneous. Porter, 958 So.2d at 11. When factual findings are based on determinations of the credibility of the witnesses, the trier of fact’s findings are disentitled to great deference because only the fact finder can be aware of the variation in demeanor and tone of voice that bear heavily on the listener’s understanding and belief in what is said. Id.
At trial, counsel for Martin’s cross-examined Ms. Redmann regarding what it alleged to be dishonest answers in her pretrial deposition regarding her activity level. Martin’s confronted Ms. Redmann about her failure to disclose during her deposition that she had worked a fundrais-ing event, the Celebration, at Jesuit High School in the spring of 2010, three months before her deposition, despite being specifically asked about her activities at Jesuit. Martin’s presented a picture of Ms. Red-mann that was taken at the Celebration. Ms. Redmann responded that she had forgotten about volunteering at the Celebration because she worked less than one hour and was asked at the last minute to help while she was attending as a patron with a paid ticket. She explained that volunteers were not required to have a paid ticket. It was pointed out that during her deposition, Ms. Redmann readily disclosed her volunteer work at the Jesuit Bazaar, which was also in the spring of 2010. Martin’s apparent point was that Ms. Redmann only admitted volunteering for one event that spring when in fact she volunteered for two events.
*1094 Martin’s also confronted Ms. Redmann about one out-of-state trip to Pensacola, Florida that she failed to mention during her deposition. Martin’s pointed out that Ms. Redmann admitted to taking only two trips, one to Pensacola in April 2009 and one to her father’s funeral in September 2009, since her 2006 accident. At trial, Ms. Redmann admitted she went to Pensacola in April 2010, which was two months before her deposition. There appeared to be some confusion about plaintiffs trips. She explained that she and her family always go to Pensacola for spring break. However, she testified that she did not go in 2006, the year of her accident, and she did not go in 2009, the year her father died. Thus, |nher trial testimony clarified that she mistakenly stated in her deposition that she went to Pensacola in 2009 instead of 2010.
We do not find these two instances demonstrate willful misrepresentations for the purpose of obtaining workers’ compensation benefits. Ms. Redmann readily admitted in her deposition that she volunteered in her children’s schools and traveled out-of-state after her work-related injury. The fact Ms. Redmann forgot less than one hour of volunteer work at one event does not constitute a willful misrepresentation that requires the forfeiture of benefits. Additionally, confusion over which year she took an out-of-state trip likewise does not constitute willful misrepresentations for purposes of La. R.S. 23:1208. As such, considering the testimony and evidence in this matter, we find the trial court was not manifestly erroneous in rejecting Martin’s claims of a La. R.S. 28:1208 violation.

Entitlement to Supplemental Earnings Benefits

Martin’s also contends Ms. Red-mann failed to prove she was entitled to supplemental earnings benefits (SEB). It contends she provided no evidence that she was disabled by her L5-S1 work-related injury in 2006.
The purpose of SEB is to compensate an injured employee for the wage earning capacity she has lost as a result of his accident. Kelly v. T.J. Maxx, 11-32 (La.App. 5 Cir. 5/24/11), 67 So.3d 643, 645, writ denied, 11-1321 (La.9/30/11), 71 So.3d 284, citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEB if she sustains a work-related accident that results in her inability to earn 90% or more of her average pre-injury wage. La. R.S. 23:1221(3).
The employee bears the initial burden of proving, by a preponderance of the evidence, that the work-related injury resulted in her inability to earn 90% of her | mpre-injury wages under the facts and circumstances of the individual case. In determining whether an injured employee has made a prima facie showing of entitlement to SEB, the court should take into account all those factors which might bear on an employee’s ability to earn a wage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008 (La.1989). Only when the employee makes this initial showing does the burden shift to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer’s community or reasonable geographic area. La. R.S. 23:1221(3)(c)(i); Daigle, 545 So.2d at 1009.
Implicit in the requirement of La. R.S. 23:1221(3) that the employee show that a work-related injury resulted in her inability to earn 90% of her pre-injury wage is a showing that the injury, and not some other cause, resulted in his inability *1095 to retain his pre-injury job. Poissenot v. St. Bernard, Parish Sheriff’s Office, 09-2793 (La.1/9/11), 56 So.3d 170. “If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident.” Buxton v. Iowa Police Department, 09-520 (La.10/20/09), 23 So.3d 275, quoting Haughton v. Fireman’s Fund American Ins. Companies, 355 So.2d 927, 929 (La.1978).
The analysis of whether an employee is entitled to SEB is necessarily a facts and circumstances one in which the court must be mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Kelly, 67 So.3d at 645. The factual findings of a workers’ compensation judge are subject to the manifest error standard of appellate review. In reviewing these factual findings, the appellate court does not determine whether the workers’ |n compensation judge was right or wrong, but rather whether the factfinder’s conclusions were reasonable. Id., citing Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38.
Although Martin’s contends Ms. Red-mann failed to show she was disabled from her 2006 work-related injury at L5-S1, the record shows otherwise. Ms. Redmann testified that prior to her 2006 accident, she worked 12-hour days five to seven days a week. Her job duties included taking catering orders, ordering from vendors, food supplies, inventory, managing 40 employees, putting out deliveries, transporting catering trays which weighed between four and 15 pounds, setting up catering facilities, and balancing the cash register. She stated she was on her feet constantly.
After the accident, Ms. Redmann testified she returned to work on restricted duty. She was limited to working four hours a day, five days a week with no lifting or bending. She also had to alternate between standing and sitting. Ms. Redmann stated she was able to work in this restricted capacity; however, Martin’s fired her because she could not return to full duty. According to Ms. Redmann, Martin’s never contacted her regarding vocational rehabilitation or potential job opportunities after firing her. She further testified that none of her treating doctors ever changed her restrictions.
Ms. Redmann testified she still suffers from back problems and has never recovered from the 2006 accident. She stated she has been unemployed since Martin’s terminated her in January 2007. The parties stipulated Ms. Redmann’s average weekly wage at the time of the accident was $1,202.92.
In addition to her testimony, Ms. Red-mann submitted the depositions of Dr. Donald Dietze and Dr. William Johnston and medical records from Dr. Dietze, Dr. Johnston, Dr. Patrick Waring, Dr. Alexis Waguespack, Dr. John Steck, and Dr. lii>Andrea Toomer. These records show that Dr. Waguespack released Ms. Red-mann to light duty work in May 2006. Light duty was defined as four hours a day, seated with being able to change positions, no lifting or carrying over ten pounds, and no bending or stooping. Subsequently, in November 2006, Dr. Wagues-pack noted that Ms. Redmann was at maximum medical improvement in light of the fact her employer’s workers’ compensation carrier denied the recommended intradiscal steroid injections. Dr. Waguespack noted that Ms. Redmann’s light duty restrictions were permanent restrictions at that point.
*1096 The only other evidence that comments on Ms. Redmann’s ability to return to work is a letter from Dr. J. Monroe La-borde, an orthopedist, to Summit Insurance dated September 2006. Dr. Laborde indicated Ms. Redmann had been seen in his office. He noted she “would prefer to continue working four hours a day but objectively there is no contraindication to her working 8 hours a day.” Dr. Laborde also indicated Ms. Redmann’s lifting restrictions could gradually be increased on a weekly basis.
The record shows Ms. Redmann treated for her L5-S1 injury from the time of her accident until trial. Martin’s seems to suggest that Ms. Redmann’s L5-S1 injury had resolved and she was only being treated for her L3-L4 injury, which has already been determined to be' unrelated to her 2006 work injury. However, the medical records show to the contrary. In early 2010, Ms. Redmann received two epidural steroid injections at the L5-S1 level. Additionally, a May 2010 MRI showed Ms. Redmann had a broad-based disc bulge at L5-S1 with an annular fissure and mild stenosis at L5-S1. As a result of this MRI, Ms. Redmann underwent physical therapy for approximately six weeks and was prescribed various medication.
[ iaBased on this evidence, Ms. Redmann met her initial burden of proving that she is unable to earn 90% of her pre-injury wage. She was earning an average weekly wage of $1,202.92 at the time of her accident. The evidence shows she was released to light duty work, but with a four-hour a day restriction.[1] Although Ms. Redmann has not looked for employment since being terminated, it is implausible that she could find a job that pays 90% of her pre-injury wage for working less than half her pre-injury hours.
Since Ms. Redmann met her initial burden of proof, the burden shifted to Martin’s who, in order to defeat the claim for SEB or establish Ms. Redmann’s earning capacity, had to prove she is physically able to perform a certain job, which was offered to her or was available in her or Martin’s community or reasonable geographic region. Martin’s offered absolutely no evidence in this regard.
Accordingly, we do not find the trial court was manifestly erroneous in awarding Ms. Redmann SEB from January 2007 through the present.

Penalties and Attorney’s Fees

In Martin’s final assignment of error, it asserts the trial court erred in assessing penalties and attorney’s fees. Martin’s contends it terminated Ms. Red-mann’s benefits in October 2009 based on this Court’s opinion in Redmann v. Martin’s Wine Cellar, 10-135 (La.App. 5 Cir. 10/12/10), 51 So.3d 41, and the fact Ms. Redmann had not treated for her L5-S1 injury for several years.
When an employer has failed to pay workers’ compensation benefits, penalties and attorney’s fees may be assessed if the employer did not reasonably | ucontrovert the claim. La. R.S. 23:1201; Manning v. PFG-Caro Foods, 10-1014 (La.App. 5 Cir. 6/14/11), 71 So.3d 981, 993. A claim for workers’ compensation benefits is reasonably controverted if the employer has some valid reason or evidence upon which to base his denial of benefits. Id.
In awarding $8,000 in penalties and $8,000 for attorney’s fees, the trial court *1097 found Martin’s failed to reasonably controvert Ms. Redmann’s need for SEB and additional medical treatment and diagnostic tests arising from her L5-S1 work-related injury.
It is uncontroverted that Ms. Redmann suffered a work-related injury at L5-S1 in January 2006. Martin’s paid benefits until October 2009. It claims it ceased paying benefits based on the trial court’s judgment after the first trial. That judgment simply found Ms. Redmann’s L3-L4 injury or problem was not related to the 2006 work-related accident and denied medical benefits for the L3-L4 injury. There is no mention in that judgment relating to Ms. Redmann’s disability status as it relates to her L5-S1 work-related injury. Martin’s further argues it terminated benefits based on this Court’s 2010 opinion finding Ms. Redmann’s L5-S1 injury had “improved.” It is absurd for Martin’s to suggest it relied on this Court’s opinion to terminate benefits when Martin’s terminated Ms. Redmann’s benefits one year before this Court’s opinion was even rendered. Further, this Court never stated Ms. Redmann’s L5-S1 injury had resolved.
A review of the record shows Martin’s did not present any evidence or argument at trial to show Ms. Redmann’s claim was reasonably controverted. Accordingly, we do not find the trial court was manifestly erroneous in finding that Martin’s failed to reasonably controvert Ms. Redmann’s claim for benefits and in assessing penalties and attorney’s fees against Martin’s.
| xzAttomey’s Fees on Appeal
Ms. Redmann has answered this appeal pursuant to La. C.C.P. art. 2133 seeking additional attorney’s fees which were incurred by counsel in opposing this appeal. Such an award is appropriate when the employer appeals, obtains no relief, and the appeal necessitates additional work for the employee’s counsel, provided the employee properly requests the increase. Guillory v. Bofinger’s Tree Service, 06-86 (La.App. 1 Cir. 11/3/06), 950 So.2d 682.
In this case, Martin’s was unsuccessful on appeal. Considering Ms. Redmann’s attorney had to do additional work to defend the appeal, we find an additional award of attorney’s fees in the amount of $2,500 to be reasonable.

DECREE

For the foregoing reasons, the trial court’s judgment awarding claimant, Jeannie Redmann, SEB and assessing penalties and attorney’s fees against defendant, Martin’s Wine Cellar, is affirmed. Additionally, the claimant is awarded $2,500 for attorney’s fees necessitated by the appeal. Defendant is to bear the costs of this appeal.

AFFIRMED

. Although there is some evidence Ms. Red-mann could work an eight-hour day, we cannot say the trial court’s reliance on Dr. Wag-uespack's restriction of four hours a day over Dr. Laborde’s notation that there is no contraindication to Ms. Redmann working an eight-hour day is clearly wrong,